

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 7, 2023

**BY ECF**
The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

   Re: *United States v. Efrem Zelony-Mindell*, 23 Cr. 11 (PAE)

Dear Judge Engelmayer:

   The Government respectfully submits this letter in advance of sentencing in the above-referenced case, which is scheduled for November 14, 2023 at 2:00 p.m., and in response to the defendant's submission, dated October 31, 2023. As set forth in the plea agreement between the parties, the parties have stipulated that the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range is 210 to 240 months' imprisonment, with a mandatory minimum of 60 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government submits that a below-Guidelines sentence of 120 months' imprisonment is appropriate in this case.

   **I.**  **Offense Conduct**

   Beginning in April 2022, the defendant began communicating with an undercover FBI agent ("UC-1") using the encrypted messaging application, Telegram, regarding pedophilia and child pornography. (Presentence Investigation Report ("PSR") ¶ 24). Within days of first communicating with UC-1 over Telegram, the defendant began sending UC-1 images and videos containing child pornography, and continued to do so on multiple occasions. (PSR ¶¶ 26–29). These images and videos included, for example:

- A video depicting an adult male raping an approximately eleven-year-old boy by penetrating him anally. (PSR ¶ 26).
- An image of an approximately four-year-old boy being forced to perform oral sex on an adult male. (PSR ¶ 26).
- An image of an adult male restraining an approximately twelve-year-old boy whose penis and anus are exposed. (PSR ¶ 26).
- An image of an approximately ten-year-old boy crouching over the face of an adult male who is masturbating and licking the boy's anus. (PSR ¶ 27).
- An image of an adult male licking the anus of an approximately eight-year-old boy. (PSR ¶ 28).

Honorable Paul A. Engelmayer
United States District Judge
November 7, 2023
Page 2

- An image of an approximately six-year-old boy who is nude lying face down on a bed.  (PSR ¶ 28).
- A video of an approximately ten-year-old boy, nude, being forced to perform oral sex on an adult male.  (PSR ¶ 29).
- An image of an adult male raping an approximately eight-year-old girl by penetrating her vaginally.  (PSR ¶ 29).

On May 9, 2022, the defendant began communicating with a second undercover FBI agent ("UC-2") who was posing as the father of a nine-year-old boy.  (PSR ¶¶ 30, 31).  Just as they had done with UC-1, the defendant sent UC-2 images and videos containing child pornography, and continued to do so on multiple occasions.  (PSR ¶¶ 32–34).  These images and videos included, for example:

- An image of an adult male with an erect penis exposed pinning the legs of an approximately thirteen-year-old boy over the boy's head with the boy's anus and penis exposed.  (PSR ¶ 32).
- A video of an approximately ten-year-old child being raped by an adult male who was penetrating the child anally.  (PSR ¶ 33).

In addition, the defendant expressed an interest in engaging in sexual activity with UC-2's purported nine-year-old son.  (PSR ¶ 36).  UC-2 informed the defendant that the nine-year-old would be on sleep medication during the planned sexual activity so the child would be "knocked out a little bit," to which the defendant responded "Yeah, totally."  (PSR ¶ 36).  After the defendant moved from New York to Arkansas, the defendant and UC-2 continued to communicate regarding a meeting involving sexual activity between the purported nine-year-old boy and the defendant.  The defendant stated in one message: "You really want your kid to take my dick?  Cause if we get together I'm absolutely going to fuck him."  (PSR ¶ 38).

In the course of their conversations, the defendant and UC-2 made plans to meet on December 16, 2022 for the defendant to have sex with the nine-year-old child.  (PSR ¶ 43).  Days before the planned meeting, the defendant stated to UC-2: "I can't wait to taste his sexy little 9 year old penis."  (*Id.*).  On the day of the planned meeting, the defendant arrived with lubricant, at which time they were arrested. The defendant subsequently admitted to showing up to the meeting to have sex with the nine-year-old child.  (PSR ¶ 46).

Law enforcement subsequently reviewed photographs and videos on the defendant's electronic devices pursuant to judicially authorized search warrants and to the defendant's consent for certain devices.  They identified thousands of files containing child pornography, including images of sexual abuse of infants and toddlers.  (PSR ¶¶ 8(ii), (iii)).  Their phone alone contained approximately 2,400 videos and images of child pornography.  (Defense Submission at pdf p. 33).

Honorable Paul A. Engelmayer
United States District Judge
November 7, 2023
Page 3

## II. Procedural History

The defendant was arrested on December 16, 2022, and charged by complaint with three counts: (1) distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), (b)(1), and 2; (2) possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2; and (3) attempted enticement of a minor, in violation of 18 U.S.C. §§ 2422(b) and 2. The defendant was presented before Chief Magistrate Judge James L. Cott and ordered detained pending trial. (Dkt. 3). On January 9, 2023, a grand jury returned an indictment charging the same three offenses as those charged in the complaint. (Dkt. 4). On July 19, 2023, the defendant pleaded guilty to Count One of the Indictment pursuant to a plea agreement. In the plea agreement, the parties agreed that, based on an offense level of 37 and criminal history category of I, the Stipulated Guidelines Range was 210 to 240 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment.

On October 5, 2023, the United States Probation Office ("Probation") issued the final PSR and also calculated the Guidelines Range as 210 to 240 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment. (PSR ¶¶ 137–38). Probation recommends a sentence of 120 months' imprisonment. (*Id.* at 28).

## III. Discussion

### A. Applicable Law

Although the Guidelines are no longer mandatory, they provide strong and relevant guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that range "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). As the Second Circuit has remarked *en banc*, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (internal quotation marks omitted). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

Honorable Paul A. Engelmayer
United States District Judge
November 7, 2023
Page 4

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. The Sentencing Factors Support a Sentence of 120 Months' Imprisonment

The Government respectfully submits that a sentence of 120 months' imprisonment would be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the seriousness of the offense cannot be overstated. The defendant possessed thousands of images of child pornography, including of prepubescent minors, toddlers, and infants. The defendant also engaged actively in distributing and sharing their trove of child pornography with UC-1 and UC-2, perpetuating the cycle of revictimization and expansion of the market for images of horrific abuse of children. As the Second Circuit has noted:

> Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York v. Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *Ferber*, 458 U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, *see Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

Honorable Paul A. Engelmayer
United States District Judge
November 7, 2023
Page 5

The possession, downloading, and distribution of child pornography also fosters and expands a market for more abuse. *See, e.g.*, *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (acknowledging district court's observation that the defendant's crimes "create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)). In this regard, it is imperative that the Court consider the character of child pornography for which the defendant was creating and expanding a market. The files contained on the defendant's devices contain graphic abuse of infants and toddlers.

The defendant's conduct, however, does not end with their fostering and expanding such market for abuse. The defendant attempted to sexually abuse a nine-year-old child themselves. The defendant planned a trip from Arkansas to New York, making plans months in advance to sexually abuse a nine-year-old boy. They then showed up at a prearranged meeting location to do so, bringing lubricant with him, and knowing that the child would be "knocked out a little bit."

That conduct is abhorrent, and the Court should reject the argument that the fact that the charges here arise from a sting operation is mitigating. Not so. The record is clear—the defendant tried to have sexual contact with a nine-year-old child. The fact that they were caught in a sting operation does not mitigate the harm the defendant intended and was prepared to inflict on a child under ten years old.[1]

*Second*, a significant sentence here is necessary for specific and general deterrence.

*Third*, the need to protect the public—and specifically, society's most vulnerable—is paramount. In its submission, the defense asserts that the risk of recidivism is low based on a report of a psychiatric and psychosexual evaluation performed by Dr. Alexander Bardey at the defense's request. This argument is problematic for several reasons. Dr. Bardey in fact diagnosed the defendant with pedophilic disorder. Dr. Bardey's determination, reflected in the report, that the defendant is not "exclusively interested in children" in no way detracts from the reality that the defendant has an interest in children, has been diagnosed with pedophilic disorder, and has acted on that interest, attempting to harm a nine-year-old. The same is true of any suggestion in the report that a sexual interest in fourteen- to seventeen-year-olds is "normal." Regardless of what sexual interests or fantasies may be normal, the defendant acted on their sexual interest in prepubescent children. The report's failure to address this behavior, and the defendant's interest in prepubescent minors generally, seriously undermines the report's conclusion that the defendant presents a low risk of dangerousness and recidivism.

---

[1] *See United States v. Dobrowolski*, 406 F. App'x 11, 13 (6th Cir. 2010) ("[T]he offender's conduct in such a case reflects a real attempt to engage in sexual abuse of a child, and the fact that the target of the effort turned out to be an undercover officer has no bearing on the culpability of the offender, or on the danger he presents to children if not adequately restrained and deterred by criminal punishment." (quoting H.R. Rep. No. 108–66, at 51 (2003))); *see also United States v. Fortner*, 943 F.3d 1007, 1011 (6th Cir. 2019) ("[L]aws designed to root out child predation frequently cover attempt crimes against non-existing children precisely to avoid completed crimes against existing children.").

Moreover, the absence of any discussion in the report of the defendant's interest in pre-pubescent minors, demonstrated by their possession and distribution of child pornography depicting prepubescent minors, including infants and toddlers, and their intent and actions attempting to have sex with a nine-year-old child, raises serious concerns related to recidivism, dangerousness, and acceptance of responsibility. The report indicates a lack of disclosure from the defendant on the subject. Where the report otherwise is heavily detailed—and largely reliant on the defendant's self-reporting throughout—the topic of sexual interest in prepubescent minors stands out as the exception where there is scant if any discussion. This is so notwithstanding the defendant's repeated statements in their letter regarding acceptance of responsibility and their desire to change through treatment. Failure to address or even acknowledge arguably the most troubling body of conduct renders the defendant's statements of acceptance of responsibility and willingness to change less credible, and need for deterrence and protection of public more serious.

*Fourth*, a significant but below-Guidelines carceral sentence of 120 months' imprisonment is appropriate because it not only balances the factors discussed above but considers the need to avoid any unwarranted sentence disparities. The defense argues in its submission that the Court should ignore sentences imposed in the last five fiscal years for defendants whose primary guideline was U.S.S.G. § 2G1.3, with a total offense level of 37 and criminal history category of I. There were 30 such defendants who received sentences of imprisonment, and both the average and median length of the carceral sentences was 180 months' imprisonment. The defense argues that the Court should disregard these facts when considering whether the sentence imposed will create unwarranted disparities because the relevant Guideline, Section 2G1.3, corresponds to "an offense to which Efrem was not required to plead guilty." Defense Submission at 16. The defense suggests also, without support or citation, that the defendant's case is factually distinguishable and thus inappropriately considered against the body of sentences imposed pursuant to Section 2G1.3. The Court should reject this argument.

Following the defense's submission of a mitigation package and the Government's careful consideration of it along with the individual facts of this case, the defendant was required to stipulate facts in the plea agreement related to the offense conduct here, and to which Section 2G1.3 applies. The defendant stipulated also to the Guidelines calculation and grouping analysis in the plea agreement. The parties and Probation thus agree that Section 2G1.3 is the relevant primary Guideline. While the Guidelines are advisory only, they are an initial benchmark, and relevant to that benchmark are the sentences of like defendants imposed pursuant to it. The Judiciary Sentencing Information included in the PSR states that such sentences of imprisonment imposed were on average 180 months.

The defense instead urges the Court to consider several sentences imposed in this district under different Guidelines. But even putting aside the Guideline issue, the facts and circumstances of the cases are distinguishable. *See United States v. Richard Viet Nguyen*, 22 Cr. 508 (MKV),

Defense Sentencing Submission, Dkt. 38 at 7, 11 (noting that following the defendant's evaluation, the defendant was not diagnosed with pedophilia or any other paraphilic disorder); *United States v. Wesley Mackow*, 20 Cr. 114 (LJL), Sentencing Transcript, Dkt. 51 (noting that the defendant was 21 years old at the time of the offense and his brain had not fully developed yet, and that the defendant had been diagnosed with a number of disorders related to anxiety, but not finding that the defendant had been diagnosed with pedophilic disorder); *United States v. Faizul Hussain*, 19 Cr. 40 (WHP), Opinion and Order, Dkt. 60 (stating that the offense conduct involved attempts to obtain naked photographs of and meet to engage in sexual activity with a purported thirteen-year-old girl who in fact was an undercover police officer, where there is no indication that the offense involved demonstrably prepubescent minors or troves of child pornography depicting such minors); *United States v. Donnie Fetters*, 19 Cr. 387 (VM), Sentencing Transcript, Dkt. 75 (reflecting that the offense conduct involved travel to engage in sexual activity with a purported seven-year-old child and purported nine-year-old child, where there is no indication that the offense involved possession and distribution of thousands of files of child pornography); *United States v. Jesse Rodriguez*, 18 Cr. 488 (LTS) (sentence imposed after intervening finding that defendant was not competent to stand trial and restoration of competency); *United States v. Joseph Bagaglia*, 19 Cr. 342 (LGS), Judgment, Dkt. 63 (stating that the defendant has Autism Spectrum Disorder Level 2); *United States v. Gabriel Neves*, 18 Cr. 583 (GBD) (involving possession and distribution of child pornography where the defendant was arrested following execution of a search warrant and not upon arrival at a meeting location for purposes of engaging in sexual activity with a prepubescent minor).

In recommending a significant but below-Guidelines sentence here, the Government recognizes the fact that the defendant has no criminal history, demonstrated significant cooperation with law enforcement, has struggled with mental health, and expressed a strong desire to seek treatment and engage safely and productively in society. For these reasons, and those discussed above, the Government recommends a sentence both significantly below-Guidelines, and sufficiently serious to achieve the goals of sentencing here.

Honorable Paul A. Engelmayer
United States District Judge
November 7, 2023
Page 8

### IV. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence of 120 months' imprisonment is warranted in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Lisa Daniels
Assistant United States Attorney
Southern District of New York
Tel: (212) 637-2955

Cc:   Counsel of record (by ECF)